GRANT and others *vs.* SKINNER.

S. being the owner of three shingle machines and belting, which he had recently purchased, in the state of Maine, an agreement was made between him and E. and H. G. G. as follows: "E. and H. G. G. agree to pay D. G. S. for the above machines and belting, time, services and expenses, the sum of $810.75, within five months, and D. G. S. agrees to take the above amount as above stated, but lends to said G.s the 'property above stated, and if they fail to pay, he is at liberty to take the property away, to enable him to realize the amount and interest." *Held*, that this transaction was to be regarded as a *conditional sale*, rather than an absolute sale with a reconveyance by way of *mortgage;* and that it was erroneous to instruct the jury that the instrument was a mortgage, and that, it not having been filed as a mortgage, persons claiming the same as purchasers at a sale thereof on an execution against E. and H. G. G., were entitled to recover the value of the property, in an action against S.

THIS action was brought to recover the value of three shingle machines, and the belting of the same, and the belt to a drag saw, which property had been sold by the sheriff of Steuben, under and by virtue of an execution in favor of the plaintiffs against E. and H. G. Gulick, and, upon such sale, purchased by the plaintiffs. It was tried at the Rensselaer circuit, in October, 1853, before Mr. Justice WRIGHT. It appeared upon the trial, that the machines and belting had been purchased by the defendant in the state of Maine, in February, 1852, and that he had paid for them with his own money, the defendants in the execution never having paid any thing on account of the purchase. The purchase, including transportation, amounted to $737.05. The bills were made in the name of the defendant. Upon the return of the defendant with the machines, an agreement was made between him and the Gulicks, as follows:

"E. and H. G. Gulick agree to pay D. G. Skinner, for the above machines and belting, time, services and expenses, the sum of $810.75, within five months, and D. G. Skinner agrees to take the above amount, as above stated, but lends to said Gulicks the property above stated; and if they fail

to pay, he is at liberty to take the property away, to enable him to realize the amount and interest.    Prattsburgh, March 29, 1852.                    (Signed)

                                É. & H. G. GULICK.
                                D. G. SKINNER."

Egbert Gulick, having been called as a witness for the plaintiffs, testified that there was no particular agreement with the defendant before he went after the machines; that he was to go after them and get them for the use of the Gulicks, and to advance his own money to pay for them. The machines were put in the Gulicks' mill. The defendant lived with the witness and kept his books. The plaintiffs also proved that, in a conversation with a witness, the defendant had said that he had loaned the Gulicks money—that he was going to loan $600 or $700 to buy shingle machines with, and that he was going to the state of Maine to get the machines for them.

The court charged the jury that the instrument of the 29th of March, 1852, was a mortgage, and the same not having been filed in the proper office, the plaintiffs, by their levy and sale, had acquired title to the property and were entitled to a verdict for its value. To this decision the counsel for the defendant excepted. The jury found a verdict for the plaintiffs for $630.74. Judgment having been perfected, the defendant appealed to the general term.

*J. A. Millard,* for the plaintiffs.

*R. Campbell, Jr.,* for the defendant.

*By the Court,* HARRIS, J.    The defendant went to Maine and purchased the property in question. He paid for it with his own money, and took a bill of purchase in his own name. Upon the face of the transaction, therefore, the defendant was the owner. If, notwithstanding these facts, it was claimed that the defendant made the purchase as the agent of the Gulicks, the question should have been submitted to the jury. There was evidence enough to require such submission, but not enough to warrant

Grant *v.* Skinner.

the court in assuming that the Gulicks, and not the defendant, were the original purchasers.

The parties, in making the instrument of the 29th of March, seem to have assumed that the defendant was the owner. The Gulicks agreed *to pay* the defendant a specified sum for the property, and the defendant agreed to accept the sum mentioned. Such language is only appropriate to a sale. It is not adapted to the case of a mortgage. Again, the sale was upon credit. The Gulicks were to *pay* for it within five months, and, in the meantime, the defendant was to *lend* the property to them. Such terms evidently presuppose the ownership to be in the defendant. On the other hand, the latter clause in the instrument is suited to the case of a mortgage. It is declared that if the Gulicks should fail to pay, the defendant should be at liberty to take the property away, to enable him to realize the amount specified, with interest. This language, however, is not inconsistent with the idea of a conditional sale, especially when considered in connection with the other facts in the case.

The defendant lived with one of the Gulicks. He was in the habit of assisting them, both by lending them money and by his personal services. The machines, with their fixtures, were purchased by him at their instance and for their use and benefit. It is quite apparent that he would never have made such a purchase under any other circumstances. Having no use for such property himself, it was quite natural for him, in making an arrangement with the Gulicks, to reserve the right, in case they should fail to pay for the property according to their agreement, to resume the possession to enable him, by making some other disposition of it, to re-imburse himself for the money he had expended in the purchase.

It is worthy of notice, too, that the Gulicks do not appear ever to have claimed any ownership of the property. Egbert Gulick says there was no particular agreement on the subject before the machines were purchased, except that the defendant was to go after the machines and advance the money to pay for them, and when he returned, the instrument of the 29th of March was made. Suppose, under these circumstances, the

Grant *v.* Skinner.

question of ownership had been raised between the defendant and the Gulicks directly. The purchase having been made by the defendant himself—the price, and all the expenses connected with the purchase, having been paid by him—the bill of sale having been taken in his name, and there being no agreement that in making the purchase he should act as the agent of the Gulicks, when, it might be asked, was the title transferred from the defendant to the Gulicks? When did the Gulicks acquire such an ownership as authorized them to mortgage the property? If the answer be, at the time of the purchase by the defendant, then this was a question to be decided by the jury upon the evidence. If at the time of the execution of the instrument of the 29th of March, we have seen that the better, as well as the more equitable construction of this transaction, requires that it should be regarded as a conditional sale, rather than an absolute sale with a reconveyance by way of mortgage. Until the performance of the condition, it was expressly agreed that the Gulicks should hold the property as bailees, and not as owners. There was nothing in this transaction to pass the title to the Gulicks. (*See Strong* v. *Taylor,* 2 *Hill,* 326; *Herring* v. *Willard,* 2 *Sand.* 418.) I think, therefore, it was error to instruct the jury that the instrument of the 29th of March was a mortgage, and that, it not having been filed as a mortgage, the plaintiffs were entitled to a verdict for the value of the property. For this error a new trial should be awarded, with costs to abide the event.

[ALBANY GENERAL TERM, December 4, 1854. *Wright, Harris* and *Watson,* Justices.]